■ In the Matter of TREGER REALTY Co., Respondent, v DANIEL JOY, as Commissioner of the Department of Rent and Housing Maintenance, et al., Appellants.—Judgment, Supreme Court, New York County, dated November 8, 1976 (apparently entered Dec. 21, 1977), in an article 78 proceeding annulling maximum base rent (MBR) orders issued by appellant New York City Rent Control Commissioner and remanding the matter to appellant for recomputation of the maximum base rent on specified guidelines, is unanimously reversed, on the law, vacated and the petition in this article 78 proceeding is dismissed, with $60 costs and disbursements of this appeal to respondents-appellants. The District Rent Director's MBR order of September 17, 1975 superseded all previous MBR orders. On protest, it was affirmed by the commissioner. The commissioner's action in affirming said order was not arbitrary, capricious or irrational. Certain factors entered into the formula for the fixation of MBRs. Three of these are involved here,—room count, pay-roll, and commercial income. With respect to room count and payroll, petitioner has offered nothing to show that the commissioner's figures were incorrect. With respect to commercial income from the premises, the following facts appear from the record: The lower floors of the premises were occupied by Barney's, a large clothing enterprise; the upper floors were residential and it is as to them that the MBR had to be fixed. For the period after January 1, 1972 (the period here involved), under the commission's procedures, calculations were to be made on the basis of the base year, July 1, 1969 to June 30, 1970. Prior to that year, the fourth floor had been residential. Barney's wished to have the fourth floor for its commercial operations and a lease was finally entered into effective April 1, 1970 for Barney's to occupy the fourth floor for commercial use. Thus the fourth floor was in commercial occupancy for only three of the 12 months of the base year. During the preceding nine months the premises were in part occupied for residence and in part held vacant until the whole floor could become available for Barney's occupancy. Commercial income enters into the MBR formula as one of the factors in apportioning certain building-wide expenses between the commercial and residential portion of the building. The period for which the MBRs were to be fixed was the period beginning January 1, 1972, during which time of course the fourth floor would at all times represent commercial occupancy income. Because of the changes in the fourth floor during the base year, the actual experience of the fourth floor in the base year would not be representative of the commercial income or commercial rental worth of that floor. It would distort the rental worth to take into account only the rental income for the one quarter of the base year in which Barney's occupied the fourth floor. Nor could the actual money receipts from Barney's for the fourth floor during the base year be annualized to arrive at a year's commercial income for the fourth floor because those receipts were arrived at by a consideration of (a) the rents specified in the Barney's lease plus (b) a contribution from Barney's for alterations of the fourth floor and for reimbursement for loss of rents for apartments held vacant on the fourth floor in anticipation of Barney's

taking over the floor and less (c) some moneys withheld by Barney's for claims of overpayments previously made. Petitioner-owner was unable to specifically define the amounts of these overpayments and underpayments. Accordingly, the rent commissioner took the monthly rent as specified in Barney's lease and annualized it as the commercial income for the fourth floor. It is argued that this constituted a "one-way projection" and that if income was to be projected into the future so should expenses. This is true with respect to recurring income and expenses where the change, though prospective in impact, has been fixed, but in general not if the changes had accrued and arisen at a future date. *(Matter of Alibel Corp. v Compo Shoe,* 285 App Div 140, 142-143.) We note with respect to payroll expenses that there was a union contract in effect providing for annual increases for a three-year period beginning April 21, 1970. The rent commission calculated payroll on the basis of wage rates from April 21, 1971 to April 21, 1972, a higher figure than the wage rate in effect during the base year and equal to the actual wage rate in effect on December 31, 1971. As stated by Justice Murphy in *Daugherty v Altman* (NYLJ, Sept. 17, 1970, p 2, col 6): "As to the accounting and auditing procedures, it is the obligation of this court to merely determine whether the methods used are fair and reasonable under the circumstances." On the whole case we cannot say that the Rent Control Commission's determination was arbitrary, capricious or irrational. This exhausts the judicial function in such cases. We of course do not pass on the power of the commissioner on proper application, if permitted by the commissioner's procedures, to grant petitioner relief on future showing to the commissioner of errors of fact or undue hardship. We note that many of the statements of fact in the respondent's brief are unsupported by record references; and the brief contains a purported quotation of subdivision 1 of section 33 of the Multiple Dwelling Law which is misquoted in the respect for which it is cited. Concur—Silverman, J. P., Fein, Lane, Sandler and Sullivan, JJ.